**ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Friday, June 19, 2025 11:33:14 AM
CASE NUMBER: 2025 CV 03498 Docket ID: 962429335
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO**

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, OHIO

EXHIBIT 1

| | | |
|---|---|---|
| CHERYL MONTESI<br>1016 Brehm Boulevard<br>Fairborn, Ohio 45324<br><br>-and-<br><br>BRIAN BUNNELL<br>1016 Brehm Boulevard<br>Fairborn, Ohio 45324<br><br>                Plaintiffs,<br><br>v.<br><br>ALDINGER COMPANY d/b/a CAL TEC PROCESS MANAGEMENT<br>1400 Grange Hall Road, Suite 500<br>Beavercreek, Ohio 45430<br><br>    **Serve Also:**<br>    ALDINGER COMPANY d/b/a CAL<br>    TEC PROCESS MANAGEMENT<br>    c/o Corporation Service Company<br>    1160 Dublin Road, Suite 400<br>    Columbus, Ohio 43215<br><br>-and-<br><br>BMAN ENTERPRISES, LLC<br>c/o George F. Urban<br>2022 Tamarack Ridge Court<br>Beavercreek, Ohio 45431<br><br>-and-<br><br>BRYAN BENTLEY<br>100 S Signature Drive<br>Xenia, Ohio 45385<br><br>-and- | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br><br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |



```
KATHLEEN REILY                              )
c/o Include Equity Partners                 )
EQT Plaza, Suite 2300                       )
625 Liberty Avenue                          )
Pittsburgh, Pennsylvania 15222              )
                                            )
-and-                                       )
                                            )
JOSEPH MOSER                                )
c/o Aldinger Company                        )
1440 Prudential Drive                       )
Dallas, Texas 75235                         )
                                            )
              Defendants.                   )
```

Plaintiffs Cheryl Montesi and Brian Bunnell, by and through undersigned counsel, as their Complaint against Defendants Aldinger Company d/b/a Cal Tec Process Management ("Aldinger"), BMAN Enterprises, LLC ("BMAN"), Bryan Bentley, Kathleen Reily, and Joseph Moser, state and aver the following:

## PARTIES, JURISDICTION, & VENUE

1. Plaintiffs are residents of the city of Fairborn, Greene County, Ohio.

2. Aldinger is a foreign corporation that does business at 1400 Grange Hall Road, Suite 500, Beavercreek, Ohio 45430.

3. BMAN is a domestic limited liability company that did business at 1400 Grange Hall Road, Suite 500, Beavercreek, Ohio 45430 at times relevant for this complaint.

4. Aldinger and BMAN were employers within the meaning of R.C. § 4112.01 *et seq.* at the relevant times herein.

5. Based on information and belief, Bentley is a resident of the state of Ohio.

6. Based on information and belief, Reily is a resident of the state of Pennsylvania.

7. Based on information and belief, Moser is a resident of the state of Texas.

8. All of the material events alleged in this Complaint occurred in Montgomery County.

2



9. Personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1)&(4).

10. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and (6).

11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

12. On or about April 10, 2025, the Equal Employment Opportunity Commission ("EEOC") issued Notice of Right to Sue letter to Bunnell regarding the Bunnell's EEOC Charges.

13. On or about April 11, 2025, the EEOC issued Notice of Right to Sue letter to Montesi regarding the Montesi's EEOC Charges.

14. On or about May 1, 2025, the Ohio Civil Rights Commission ("OCRC") issued a Notice of Right to Sue letter to Montesi regarding Montesi's OCRC Charge.

15. On or about May 1, 2025, the OCRC issued a Notice of Right to Sue letter to Bunnell regarding Bunnell's OCRC Charge.

16. Montesi has properly exhausted her administrative remedies pursuant to R.C. § 4112.052.

17. Bunnell has properly exhausted his administrative remedies pursuant to R.C. § 4112.052.

18. Montesi and Bunnell's claims arise out of the same series of transactions or occurrences and there are common questions of fact between them.

## FACTS

19. On or about December 2017, Bunnell began working for Cal Tec Process Management, LLC ("Cal Tec").

20. Based on information and belief, Cal Tec no longer exists as a distinct legal entity at the time of filing.

21. Based on information and belief, Cal Tec was owned by George Urban at the time Bunnell was hired.



22. Bunnell was employed in the position of Operations and Quality Manager.

23. Bunnell was the second-highest-ranking employee at Cal Tec's 1400 Grange Hall Road, Suite 500, Beavercreek, Ohio 45430 location ("Beavercreek Location").

24. Bunnell was 53 years old during the relevant times herein.

25. Bunnell is in a protected class based on his age.

26. Bunnell is a man.

27. Bunnell was the second-oldest employee at Cal Tec during the relevant times herein.

28. On or about April 13, 2020, Montesi began working for Cal Tec.

29. Based on information and belief, Cal Tec was owned by Urban at the time Montesi was hired.

30. Montesi was employed in the position of Client Administrator.

31. Montesi was 63 years old during the relevant times herein.

32. Montesi is in a protected class based on her age.

33. Montesi was the oldest employee at Cal Tec during the relevant times herein.

34. Montesi is a woman.

35. Montesi is in a protected class based on her gender.

36. Bunnell and Montesi are married.

37. Based on information and belief, Urban sold Cal Tec to BMAN in December 2023.

38. Based on information and belief, in or around April 2024, BMAN finalized the sale of Cal Tec to Aldinger.

39. Based on information and belief, Aldinger's acquisition of Cal Tec from BMAN became effective on or about April 30, 2024.

40. Aldinger continues to operate Cal Tec's former Beavercreek Location.

4



41. The following events occurred during the transition of Cal Tec's ownership from BMAN to Aldinger.

42. On or about April 29, 2024, Bunnell met with Bryan Bentley to discuss the transfer of ownership.

43. Bentley was the former owner and operator of Cal Tec.

44. Bentley was a former employee of Cal Tec.

45. Bentley was Bunnell's supervisor.

46. Bentley is the owner of BMAN.

47. Bentley is an employee of BMAN.

48. On or about April 29, 2024, Bentley informed Bunnell that Cal Tec had been acquired by Aldinger.

49. On or about April 29, 2024, Bentley told Bunnell that his title was no longer Operations Manager.

50. On or about April 29, 2024, Bentley told Bunnell that Aldinger would be assigning him a new title with the same or similar job duties as Operations Manager.

51. On or about April 29, 2024, Bentley told Bunnell that Aldinger would likely give him the job title of Account Manager.

52. On or about April 29, 2024, Bentley assured Bunnell that Aldinger had agreed to retain Cal Tec's existing employees, including Bunnell and Montesi.

53. Later, on or about April 29, 2024, Bunnell asked Joseph Moser about his new role after the buyout.

54. Moser is the Chief Executive Officer of Aldinger.

55. Based on information and belief, Moser is in his late thirties or early forties.

56. Moser is substantially younger than Bunnell.

57. Moser is a man.

5



58. On or about April 29, 2024, Moser was visiting the Beavercreek Location to facilitate the transfer of ownership.

59. On or about April 29, 2024, Moser told Bunnell they would discuss his role in more detail the following day.

60. On or about April 30, 2024, Bunnell returned to work at the Beavercreek Location, believing he was now employed by Aldinger with an undeclared job title and job responsibilities in reliance on Bentley's representations.

61. Bunnell met with Moser and Kathleen Reily under the pretense of discussing his new role after the acquisition.

62. Reily was the Chief Financial Officer of Aldinger.

63. Based on information and belief, Reily is in her late thirties or early forties.

64. Reily is substantially younger than Bunnell.

65. Reily is a woman.

66. On or about April 30, 2024, Moser told Bunnell that there was no role for him with Aldinger post-acquisition since he allegedly rejected a job offer. ("Moser's Ruse")

67. Moser's Ruse has no basis in fact.

68. Moser never offered Bunnell a new job title or alternative position with Aldinger as promised by Bentley.

69. The purpose of Moser's Ruse was to confuse the status of Bunnell's employment.

70. The purpose of Moser's Ruse was to disguise Aldinger's discharge of Bunnell's employment.

71. In the alternative, Bentley instructed Moser to discharge Bunnell's employment from Cal Tec and BMAN on his behalf.

6



72. In the alternative, the purpose of Moser's Ruse was to disguise Cal Tec and BMAN's discharge of Bunnell's employment.

73. On or about April 30, 2024, Bunnell corrected Moser that he had not rejected a job offer.

74. On or about April 30, 2024, Bunnell invited Moser and Reily to discuss options for continued employment.

75. On or about April 30, 2024, Moser became angry in response to Moser's invitation to discuss options for continued employment.

76. On or about April 30, 2024, Moser hurled insults at Bunnell in response to Moser's invitation to discuss options for continued employment.

77. On or about April 30, 2024, Moser insisted that Bunnell should leave the building.

78. On or about April 30, 2024, Moser terminated Bunnell's employment with Aldinger.

79. In the alternative, on or about April 30, 2024, Moser terminated Bunnell's employment with Cal Tec and BMAN.

80. Moser did not proffer a legitimate, nondiscriminatory reason to terminate Bunnell's employment.

81. Upon information and belief, Aldinger replaced Bunnell with James Jones.

82. Jones is in his early 40s.

83. Jones is substantially younger than Bunnell.

84. Aldinger terminated Bunnell's employment because of his age.

85. Aldinger terminated Bunnell's employment because he opposed unfair treatment on the basis of his age.

86. In the alternative, Cal Tec and BMAN terminated Bunnell's employment because of his age.

87. In the alternative, Cal Tec and BMAN terminated Bunnell's employment because he opposed unfair treatment on the basis of his age.



88. Shortly after Bunnell's employment was terminated, Aldinger posted two job openings at the Beavercreek Location for an Account Manager and Driver.

89. Bunnell was well qualified for both the Account Manager position and Driver position.

90. Bunnell was previously an Account Manager and Driver for Cal Tec.

91. Aldinger could have offered Bunnell the Account Manager position as Bentley suggested.

92. Aldinger did not offer Bunnell either position as an alternative to termination.

93. On or about April 30, 2024, Bunnell told Montesi that Moser had ended his employment.

94. Within 30 minutes, on or about April 30, 2024, Reily visited Montesi in her office.

95. On or about April 30, 2024, Reily asked Montesi to "leave."

96. On or about April 30, 2024, Montesi asked for clarification about her employment status.

97. On or about April 30, 2024, Reily rhetorically asked, "Do you think you can continue to work here now that your husband is gone?"

98. On or about April 30, 2024, Montesi affirmed that she would like to remain employed by Aldinger.

99. Reily disregarded Montesi's desire to remain.

100. On or about April 30, 2024, Reily terminated Montesi's employment with Aldinger.

101. In the alternative, on or about April 30, 2024, Reily terminated Montesi's employment with Cal Tec and BMAN.

102. Reily is substantially younger than Montesi.

103. Reily did not proffer a legitimate, non-discriminatory reason for terminating Montesi's employment.

104. Reily terminated Montesi's employment in reliance on harmful stereotypes about older women in office administrative roles being mere extensions of their husbands in managerial positions.

8



105. Aldinger terminated Montesi's employment because of her age.

106. Aldinger terminated Montesi's employment because she opposed unfair treatment on the basis of her age and gender.

107. In the alternative, Cal Tec and BMAN terminated Montesi's employment because of her age.

108. In the alternative, Cal Tec and BMAN terminated Montesi's employment because she opposed unfair treatment on the basis of her age and gender.

109. Based on information and belief, Aldinger replaced Montesi with a substantially younger employee.

110. At the time Aldinger terminated their employment, Montesi and Bunnell were the two oldest employees at the Beavercreek Location.

111. BMAN has a progressive disciplinary policy. ("BMAN Discipline Policy")

112. Aldinger had a progressive disciplinary policy. ("Aldinger Discipline Policy")

113. A verbal warning is the lowest level of discipline in the Aldinger Discipline Policy and BMAN Discipline Policy.

114. Plaintiffs did not receive a verbal warning before their respective employment terminations.

115. A written warning is a higher level of discipline than a verbal warning in the Aldinger Discipline Policy and BMAN Discipline Policy.

116. Plaintiffs did not receive a written warning before their respective employment terminations.

117. Termination is the highest level of discipline in the Aldinger Discipline Policy and BMAN Discipline Policy.

118. BMAN and/or Aldinger knowingly skipped progressive disciplinary steps in terminating Plaintiffs' employment.

119. BMAN and/or Aldinger knowingly terminated Plaintiffs' employment.

9



120. BMAN and/or Aldinger knowingly took an adverse employment action against Plaintiffs.

121. BMAN and/or Aldinger knowingly took an adverse action against Plaintiffs.

122. BMAN and/or Aldinger intentionally skipped progressive disciplinary steps in terminating Plaintiffs' employment.

123. BMAN and/or Aldinger intentionally terminated Plaintiffs' employment.

124. BMAN and/or Aldinger intentionally took an adverse employment action against Plaintiffs.

125. BMAN and/or Aldinger intentionally took an adverse action against Plaintiffs.

126. BMAN and/or Aldinger knew that skipping progressive disciplinary steps in terminating Plaintiffs' employment would cause Plaintiffs harm, including economic harm.

127. BMAN and/or Aldinger knew that terminating Plaintiffs' employment would cause Plaintiffs harm, including economic harm.

128. BMAN and/or Aldinger willfully skipped progressive disciplinary steps in terminating Plaintiffs' employment.

129. BMAN and/or Aldinger willfully terminated Plaintiffs' employment.

130. BMAN and/or Aldinger willfully took an adverse employment action against Plaintiffs.

131. BMAN and/or Aldinger willfully took an adverse action against Plaintiffs.

132. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(Brought by Plaintiff Bunnell against Defendants Aldinger and BMAN)**

133. Bunnell restates each and every prior paragraph of this Complaint as if it were fully restated herein.

134. Bunnell was 53 years old on April 30, 2024, at the time of his employment termination.



135. At all times relevant, Bunnell was a member of a statutorily-protected class under R.C. § 4112.14(B) based on his age.

136. Defendants treated Bunnell differently from other similarly situated employees based on their age.

137. As of April 30, 2024, Bunnell was fully qualified for his positions and employment with Defendants.

138. After terminating Bunnell's employment, Aldinger replaced Bunnell with an employee who was substantially younger.

139. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by discriminating against Bunnell based on his age.

140. As a direct and proximate result of Defendants' conduct, Bunnell suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(Brought by Plaintiff Bunnell against All Defendants)**

141. Bunnell restates each and every prior paragraph of this Complaint as if it were fully restated herein.

142. As a result of Defendants' discriminatory conduct described above, Bunnell opposed the disparate treatment he experienced.

143. Bunnell protested that Moser was misrepresenting his desire for continued employment after Aldinger's acquisition.

144. Defendants' actions were retaliatory in nature based on Plaintiffs' opposition to the unlawful discriminatory conduct.

11



145. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

146. As a direct and proximate result of Defendants' conduct, Bunnell suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT III: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION**
**(Brought by Plaintiff Bunnell against All Defendants)**

147. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

148. Bentley, Moser, and Reily aided, abetted, incited, coerced, and/or compelled Aldinger and/or BMAN's discriminatory termination of Bunnell's employment.

149. Bentley, Moser, and Reily aided, abetted, incited, coerced, and/or compelled Aldinger and/or BMAN's discriminatory treatment of Bunnell.

150. Aldinger aided, abetted, incited, coerced, and/or compelled BMAN's discriminatory termination of Bunnell's employment.

151. Aldinger aided, abetted, incited, coerced, and/or compelled BMAN's discriminatory treatment of Bunnell.

152. BMAN aided, abetted, incited, coerced, and/or compelled Aldinger's discriminatory termination of Bunnell's employment.

153. BMAN aided, abetted, incited, coerced, and/or compelled Aldinger's discriminatory treatment of Bunnell.



154. Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, inciting, and/or compelling discrimination.

155. As a direct and proximate result of Defendants' conduct, Bunnell has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IV: AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(Brought by Plaintiff Montesi against Defendants Aldinger and BMAN)**

156. Montesi restates each and every prior paragraph of this Complaint as if it were fully restated herein.

157. Montesi was 63 years old on April 30, 2024, at the time of her employment termination.

158. At all times relevant, Montesi was a member of a statutorily protected class under R.C. § 4112.14(B) based on her age.

159. Defendants treated Montesi differently from other similarly situated employees based on her age.

160. As of April 30, 2024, Montesi was fully qualified for her positions and employment with Defendants.

161. After terminating Montesi's employment, Aldinger replaced Montesi with substantially younger employee.

162. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by discriminating against Montesi based on her age.

163. As a direct and proximate result of Defendants' conduct, Montesi suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT V: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(Brought by Plaintiff Montesi against Defendants Aldinger and BMAN)**

13



164. Montesi restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

165. Montesi is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

166. Defendants treated Montesi differently from other similarly situated employees based on her gender.

167. Defendants terminated Montesi's employment without just cause.

168. Defendants terminated Montesi's employment based on her gender.

169. Defendants' discrimination against Montesi based on her gender violates R.C. § 4112.01 *et seq*.

170. As a direct and proximate result of Defendants' conduct, Montesi suffered and will continue to suffer damages, including economic and emotional distress and physical sickness damages.

**COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(Brought by Plaintiff Montesi against Defendants Aldinger, BMAN, and Reily)**

171. Montesi restates each and every prior paragraph of this Complaint as if it were fully restated herein.

172. As a result of Defendants' discriminatory conduct described above, Montesi opposed the disparate treatment she experienced.

173. Montesi opposed Reily's pressure to resign merely because Bunnell's employment had been terminated.

174. Defendants' actions were retaliatory in nature based on Montesi's opposition to the unlawful discriminatory conduct.

14



175. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

176. As a direct and proximate result of Defendants' conduct, Montesi suffered and will continue to suffer damages, including economic and emotional distress damages.

<b><u>COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION</u></b><br>
<b>(Brought by Plaintiff Montesi against Defendants Aldinger, BMAN, Bentley, and Reily)</b>

177. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

178. Bentley and Reily aided, abetted, incited, coerced, and/or compelled Aldinger and/or BMAN's discriminatory termination of Montesi's employment.

179. Bentley and Reily aided, abetted, incited, coerced, and/or compelled Aldinger and/or BMAN's discriminatory treatment of Montesi.

180. Aldinger aided, abetted, incited, coerced, and/or compelled BMAN's discriminatory termination of Montesi's employment.

181. Aldinger aided, abetted, incited, coerced, and/or compelled BMAN's discriminatory treatment of Montesi.

182. BMAN aided, abetted, incited, coerced, and/or compelled Aldinger's discriminatory termination of Montesi's employment.

183. BMAN aided, abetted, incited, coerced, and/or compelled Aldinger's discriminatory treatment of Montesi.



184. Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, inciting, and/or compelling discrimination.

185. As a direct and proximate result of Defendants' conduct, Montesi has suffered and will continue to suffer damages, including economic and emotional distress damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs Cheryl Montesi and Brian Bunnell respectfully request that this Honorable Court grant the following relief:

(a) An order directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated;

(b) An award of damages totaling in excess of $25,000 for the following:

   a. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security, and other benefits of employment;

   b. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

   c. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for harm to their professional and personal reputations and loss of career fulfillment;

   d. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, plus prejudgment interest;

(c) An award of punitive damages in excess of $25,000;

(d) An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

(e) Awarding such other and further relief that this Court deems necessary and proper.



Respectfully submitted,

*/s/ Trisha M. Breedlove*
Trisha M. Breedlove (0095852)
Paul Filippelli (0097085)
Patrick Aguilar (0104352)
SPITZ, THE EMPLOYEE'S LAW FIRM
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 401-2708
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
       paul.filippelli@spitzlawfirm.com
       patrick.aguilar@spitzlawfirm.com

*Attorneys for Plaintiffs Cheryl Montesi and Brian Bunnell*

## JURY DEMAND

Plaintiffs Cheryl Montesi and Brian Bunnell demand a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha M. Breedlove*
Trisha M. Breedlove (0095852)

*Attorney for Plaintiffs Cheryl Montesi and Brian Bunnell*

